IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELIZABETH HANSEN, Individually, and ELIZABETH HANSEN, Personal Representative of the Estate of Michael Hansen, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | **8:21CV371**<br><br><br>**MEMORANDUM AND ORDER ON THE SECOND AND THIRD ROUNDS OF MOTIONS IN LIMINE** |

This case under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 *et seq.*, arises from the tragic death of a military veteran after medical staff at a Veterans Administration Hospital discovered but failed to disclose and follow up on a treatable form of lung cancer until it had become incurable. Filing 109 at 1 (¶ 1). "Defendant admits that it was negligent, and that Plaintiff is entitled to relief, but disputes the nature and extent of Plaintiff's damages" on claims of "medical negligence" and "negligent failure to warn." Filing 113 at 7 (¶ 42); *see also* Filing 76 at 42 (¶ 42). This case is set for a non-jury trial beginning on December 12, 2023. Filing 120. This case is now before the Court on a second round of pretrial motions consisting of the following: Defendant's Motion to Sequester Witnesses, Filing 161; Plaintiff's Motions in Limine, Filing 162, seeking exclusion of eight categories of evidence; and Defendant's Second Motion in Limine, Filing 164, seeking exclusion of seven categories of evidence. It is also before the Court on a third round consisting of Defendant's eleventh-hour Third Motion in Limine, Filing 186, concerning Plaintiff's eleventh-hour supplement of an expert's report. For the reasons stated below, the Motions are granted or denied or granted in part and denied in part.

## I. INTROCUTION

This case is set for a bench trial and liability is admitted, and the Court has previously provided a statement of the pertinent factual background in its Memorandum and Order on Defendant's Motions in Limine. Filing 169. Consequently, this ruling touches even more briefly on the factual background to the case than the prior ruling did.

Decedent Michael Hansen was a U.S. Army veteran and resident of Omaha, Douglas County, Nebraska. Filing 109 at 2 (¶ 2). Elizabeth Hansen is the widow of Michael Hansen and the personal representative of his Estate. Filing 109 at 2 (¶ 3). The Court will refer to the Hansens collectively as "the Hansens" and separately as "Michael" and "Elizabeth." The Court will refer to Elizabeth Hansen in her capacity as an individual plaintiff and as the representative of the Estate as "Plaintiff."

While Michael was undergoing other treatment in July 2019, radiologist Dr. Jack Vonk observed a mass on Michael's right lung in a CT scan. Filing 109 at 4 (¶ 23). In his Radiology Report, Dr. Vonk described the CT findings as a "POSSIBLE MALIGNANCY." Filing 109 at 5 (¶ 24). The parties agree that Dr. Vonk reported his findings to Dr. Rivard, who was Michael's surgeon. Filing 109 at 5 (¶ 25). The parties agree that despite noting the presence of the mass, no follow-up on the mass was conducted by Michael's doctors at VA-Nebraska. Filing 109 at 5 (¶ 26). Michael was likewise not told about the potential tumor or that he might have cancer until October 2020. Filing 109 at 6 (¶ 32). In October 2020, further scans revealed the original mass had grown and that there was also a second mass in Michael's left lung. Filing 109 at 6 (¶¶ 31–32). A biopsy performed on the right-lung mass showed it was Stage IV Adenocarcinoma, where Stage IV is the most advanced stage of cancer. Filing 109 at 6 (¶ 33). On December 30, 2021, Michael passed away as a result of his lung cancer. Filing 109 at 7 (second ¶ 36).

2

In her Amended Complaint, Plaintiff asserts two causes of action, the first for "medical negligence" and the second for "negligent failure to warn." Filing 109 at 7–11 (¶¶ 37–49).[1] In its Amended Answer, "Defendant admits that it was negligent, and that Plaintiff is entitled to relief, but disputes the nature and extent of Plaintiff's damages." Filing 113 at 7 (¶ 42). Thus, this case is set for a non-jury trial on damages beginning on December 12, 2023. Filing 120.

The Court turns to its consideration of the parties' second round and third round of Motions in Limine.

## II.  LEGAL ANALYSIS

### A.  Sequestration of Witnesses

In the first Motion now before the Court, Defendant requests that pursuant to Federal Rule of Evidence 615 the Court exclude all witnesses except Plaintiff as a party to the action and Defendant's representative when they are not testifying. Filing 161 at 1. Similarly, in her Motions in Limine, the eighth category of evidence that Plaintiff seeks to exclude is Defendant's witnesses also pursuant to Federal Rule of Evidence 615. Filing 162 at 2. The parties' requests are granted, and the Court will exclude from the courtroom all witnesses except Plaintiff as a party to the action and Defendant's representative when they are not testifying. *See* Fed. R. Evid. 615 (effective December 1, 2023) (clarifying that the witnesses are "excluded from the courtroom").

### B.  Plaintiff's Motions in Limine

As mentioned above, Plaintiff seeks exclusion of eight categories of evidence in her Motions in Limine. Filing 162. One of those categories has already been excluded just above, so the Court turns to consideration of the remaining seven.

---

[1] The Amended Complaint contains a third cause of action for "negligent hiring, training, and supervision," but Plaintiff acknowledged that the Court previously dismissed that cause of action with prejudice, and Plaintiff states that third cause of action is included "[f]or purpose of the record." Filing 109 at 12 and n.1.

1.      *Exclusion of Undisclosed Witnesses and Evidence*

The first two categories of evidence that Plaintiff seeks to exclude are the following:

1.      Any testimony from witnesses Defendant did not previously identify, pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), as individuals having discoverable information that Defendant may use to support claims or defenses;

2.      Any exhibits, documents, or information responsive to Plaintiff's discovery requests that Defendant did not previously disclose, or which Defendant did not disclose pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), in its Rule 26(a) Disclosures[.]

Filing 162 at 1. In resolving the first round of Motions in Limine—albeit after the parties had already filed their second round of Motions—the Court stated, "The Court is frustrated by motions in limine that simply ask the Court to follow well established evidentiary and procedural rules." Filing 169 at 27. The first two parts of Plaintiff's Motions in Limine are of exactly such motions. Indeed, in response to these two categories of evidence, Defendant takes note of the Court's previous expression of frustration. Filing 178 at 1. Defendant states that it has no response to exclusion of the first two categories of evidence other than to state that all the witnesses and exhibits it intends of offer at trial have been disclosed in its initial disclosures, responses to discovery, and/or pretrial disclosures. Filing 178 at 1–2. Plaintiff wisely offers no reply concerning these two categories of evidence. *See generally* Filing 184.

The Court denies Plaintiff's Motions in Limine as to these first two categories as premature, without prejudice to assertion of timely objections at trial should any undisclosed evidence actually be offered.

2.      *Expert Opinions Not Included in Expert Witness Disclosures*

a.   The Parties' Arguments

The third category of evidence that Plaintiff seeks to exclude is "[a]ny testimony, reference or exhibits regarding expert opinions that were not included in an expert witness disclosure." Filing

162 at 1. Plaintiff argues that Defendant has identified several "non-retained treating physicians" that it plans to call at trial, including Dr. Apar Ganti, Dr. Nicole De Rosa, Dr. Nathan Birch, and Ms. Jennifer Compton. Filing 163 at 5. Plaintiff argues that Defendant's disclosures for these witnesses were short and only highlighted at a high level some topics on which their testimony would touch, but the disclosures indicate that they will testify to matters outside of their treatment of Michael for lung cancer. Filing 163 at 6. Thus, Plaintiff argues the disclosures indicate that these witnesses are really being used as witnesses "specially employed to provide expert testimony in the case," not as "treating physicians." Filing 163 at 6. Plaintiff argues that although these witnesses may not be "retained" in the "colloquial" sense, Defendant should have provided expert disclosure reports in compliance with Rule 26(a)(2)(B) for any testimony that is outside their specific treatment of Michael. Filing 63 at 7. Because there were no such disclosures for these witnesses, Plaintiff argues their testimony outside the specific medical care they provided must be excluded. Filing 163 at 7.

In response, Defendant points out that the only specific example Plaintiff provides is that Dr. Ganti should not be allowed to testify about the fact that smoking reduced Michael's life expectancy. Filing 178 at 2. However, Defendant contends that Dr. Ganti's expected testimony falls within the realm of his treatment of Michael because the medical records shows that Michael was advised multiple times about the risks of continuing to smoke both before and after he was diagnosed with cancer. Filing 178 at 2. Defendant points to an October 27, 2020, treatment note signed by Dr. Randhawa and cosigned by Dr. Ganti counseling Michael to quit smoking, which he rejected. Filing 178 at 2 (citing Filing 177-1). Thus, in Defendant's view, testimony about Michael's smoking did not require an expert report. Filing 178 at 2–3.

b. Additional Factual Background

The disclosure for Dr. Ganti that Plaintiff contends is inadequate states the following in its

entirety:

> Dr. Ganti is a clinical researcher and board-certified Medical Oncologist. Dr. Ganti will present expert testimony under Federal Rules of Evidence 702, 703 or 705 regarding his treatment and involvement with Mr. Hansen from October 2020 to December 2021.
>
> Dr. Ganti is expected to testify about how Mr. Hansen's heavy smoking history, history of marijuana abuse, coronary artery disease, end stage renal disease, diabetes, and rheumatoid arthritis limited his cancer treatment options. He is also expected to testify that research shows, continuing to smoke after being diagnosed with lung cancer, as Mr. Hansen did, further reduces one's life expectancy. Dr. Ganti is also expected to testify that lung cancer is the most common cause of cancer-related deaths in the United States and despite progress on treatments, longterm survival for non-small cell lung cancer is relatively poor.
>
> Dr. Ganti is also expected to testify regarding the medical notes he prepared and/or reviewed regarding Mr. Hansen's care that are in the medical records. Dr. Ganti's testimony will be to a reasonable degree of medical certainty. A copy of his CV is attached hereto.

Filing 165-1 at 2.

> The disclosure for Dr. de Rosa states, in pertinent part,
>
> Dr. de Rosa is also expected to testify about Mr. Hansen's physical and mental health in July 2019, as well as the significant comorbidities that impacted his health condition, including his history of cardiac disease, end stage renal disease, smoking and diabetes.

Filing 165-1 at 3. The disclosure for Dr. Birch states in pertinent part, "Dr. Birch is expected to

also testify that Mr. Hansen was not eligible for a kidney transplant due to his refusal to undergo

smoking cessation." Filing 165-1 at 3. Finally, the disclosure for Ms. Compton, APRN, states in

pertinent part, "Dr. Compton is expected to testify about the instability of Mr. Hansen's overall

health, including the status of his renal disease, coronary artery disease, depression, rheumatoid

arthritis, diabetes, and smoking (tobacco and marijuana) in July 2019." Filing 165-1 at 4.

6

As mentioned above, Defendant points to an October 27, 2020, treatment note written by Dr. Randhawa and cosigned by Dr. Ganti. Filing 178 at 2. That note stated,

> He [that is, Michael] is a current smoker, and is not willing to quit. We did counsel him about the risks associated with cigarette smoking, and it may still be of benefit if he quit smoking.

Filing 177-1 at 5; *see also* Filing 177-1 at 4 (noting in social history, "current smoker, Cigarette smoking 1.5 packs/day for the last 50 years.").

### c.   The Challenged Testimony Did Not Require Greater Disclosure

The Eighth Circuit Court of Appeals very recently summarized the requirements of Federal Rule of Civil Procedure 26(a)(2) for expert disclosures as they relate to treating physicians follows:

> Rule 26(a)(2) governs the disclosure of witnesses who may be used at trial to present expert testimony. For a witness retained or otherwise engaged to provide expert testimony in litigation, Rule 26(a)(2)(B) requires a disclosure accompanied by a written report, signed by the witness, providing prescribed, detailed information. On the other hand, for experts not required to file a written report, Rule 26(a)(2)(C), added in 2010, requires a "considerably less extensive" summary disclosure of the opinions to be offered. *See* Rule 26 advisory committee note to 2010 amendment.
>
> When Rule 26(a)(2) was added to Rule 26 in 1993, it did not include Rule 26(a)(2)(C). Addressing the written report requirement in Rule 26(a)(2)(B), the 1993 advisory committee note stated, "A treating physician ... can be deposed or called to testify at trial without any requirement for a written report." A treating physician is often called to offer an expert opinion on causation at trial, and that opinion "is subject to the same standards of scientific reliability that govern the expert opinions of physicians hired solely for purposes of litigation." *Brooks v. Union Pac. R.R. Co.*, 620 F.3d 896, 900 (8th Cir. 2010) (quotation omitted). This tension resulted in courts differing as to whether and when a treating physician witness must be disclosed and provide a written report under Rule 26(a)(2)(B). *See Goodman [v. Staples The Off. Superstore, LLC]*, 644 F.3d [817,] 824-26 [(9th Cir. 2011)].
>
> Rule 26(a)(2)(C) was added to address this tension, but it leaves unanswered the question whether a treating physician who will testify as an expert must be disclosed under Rule 26(a)(2)(B) or Rule 26(a)(2)(C). The 2010 advisory committee note simply explains that it was intended to require less extensive disclosures for expert witnesses not required to submit written reports under Rule 26(a)(2)(B). The answer, we conclude, does not turn on whether the treating physician expert was "retained" or "nonretained." Rather, we agree with the district

court and the above-cited circuit court decisions "that a treating physicians [sic] who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus is required to submit an expert report in accordance with Rule 26(a)(2)." *Meyers [v. Nat'l R.R. Passenger Corp. (Amtrak)]*, 619 F.3d [729,] 734–35 [(7th Cir. 2010),] quoting Rule 26(a)(2)(B).

*Johnson v. Friesen*, 79 F.4th 939, 943 (8th Cir. 2023).

In this case, the Court concludes that the expert opinions that Plaintiff contends required disclosure under Rule 26(a)(2)(B) did not require such disclosure. Instead, the treating healthcare providers all state that they made determinations about Michael's smoking and refusal to quit in the course of providing treatment for his cancer or prior treatment. Filing 177-1 at 5 (Dr. Randhwana's and Dr. Ganti's treatment note during cancer treatment); *see also* Filing 177-1 at 4 (noting in social history, "current smoker, Cigarette smoking 1.5 packs/day for the last 50 years."); Filing 165-1 at 2 (Dr. Ganti's disclosure); Filing 165-1 at 3 (Dr. De Rosa's disclosure); Filing 165-1 at 3 (Dr. Birch's disclosure); Filing 165-1 at 4 (Ms. Compton's disclosure). Thus, they cannot be "deemed to be one[s] retained or specially employed to provide expert testimony in the case," and thus are not "required to submit . . . expert report[s] in accordance with Rule 26(a)(2)." *Johnson*, 79 F.4th at 943 (cleaned up). Furthermore, each of the disclosures for these treating healthcare providers informed Plaintiff that they would testify about Michael's smoking and/or his refusal to quit and its impact on his life expectancy and/or his treatment options. Filing 177-1 at 5 (Dr. Randhwana's and Dr. Ganti's treatment note during cancer treatment); *see also* Filing 177-1 at 4 (noting in social history, "current smoker, Cigarette smoking 1.5 packs/day for the last 50 years."); Filing 165-1 at 2 (Dr. Ganti's disclosure); Filing 165-1 at 3 (Dr. De Rosa's disclosure); Filing 165-1 at 3 (Dr. Birch's disclosure); Filing 165-1 at 4 (Ms. Compton's disclosure). Thus, Plaintiff is not surprised by such opinions.

8

This part of Plaintiff's Motions in Limine is denied. Whether evidence of Michael's smoking cigarettes or marijuana is admissible is a separate matter that the Court will consider below.

> 3.    *Evidence of Adverse Impact of the Verdict on Defendant*

The next category of evidence that Plaintiff seeks to exclude is identified as "[a]ny evidence, testimony, statement, inference, or argument as to what impact or adverse effect, if any, a judgment or verdict will have against Defendant." Filing 162 at 1. Plaintiff argues such evidence is irrelevant to the issues to be decided in this matter and highly prejudicial. Filing 163 at 7. Defendant responds that it "has no objection to this Motion." Filing 178 at 3.

This part of Plaintiff's Motions in Limine is granted.

> 4.    *Collateral Source Payments*

> > a.    The Parties' Arguments

The fifth category of evidence that Plaintiff seeks to exclude is "[a]ny collateral sources or third-party payments of any of Plaintiff's medical bills or expenses." Filing 162 at 2. Plaintiff argues that the improper evidence about collateral sources includes but is not limited to information that Michael received the following: (1) health insurance coverage; (2) services furnished without charge; (3) benefits from social security; and (4) government program benefits, such as Medicaid. Filing 163 at 9–10. Plaintiff argues that application of the collateral source rule in this case is appropriate under either Nebraska law or under federal common law. Filing 163 at 10.

Defendant argues that the Court already opined that "neither subrogation nor the collateral source rule has any application" in this case. Filing 178 at 3 (quoting Filing 169 at 24). Consequently, Defendant argues that this part of Plaintiff's Motions in Limine should be denied as moot. Filing 178 at 3. Defendant also points out that the Court limited Elizabeth's testimony

about medical expenses to those she paid out-of-pocket. Filing 178 at 3 (citing Filing 169 at 24). However, if the Court allows Elizabeth to testify or argue about medical expenses that were paid by the VA, Defendant "reserves the right to present evidence of the VA's payment of those medical expenses." Filing 178 at 3.

### b. Exclusion of Collateral Source Payments Is Moot

Although it appears to the Court that the parties are "talking past each other" on this category of evidence, it also appears that Defendant has no intention of offering any evidence concerning any of the four kinds of allegedly improper collateral source evidence that Plaintiff specifically lists. *Compare* Filing 163 at 9–10 (listing four categories in a non-exclusive list), *with* Filing 178 at 3 (making no reference to any of those four categories). The Court has already excluded evidence that any medical expenses were paid by the VA, stating, "The Court concludes that neither subrogation nor the collateral source rule has any application here where the party that has paid medical expenses (or legally must do so independent of any wrongdoing, *see* 38 U.S.C. § 1710), is the Defendant." Filing 169 at 24. Because Defendant does not intend to offer any evidence about medical expenses paid by any collateral source or by the VA, the Court reiterates its limitation on evidence under this topic that is admissible to "evidence of medical expenses previously identified as having been paid out-of-pocket or not paid by the VA." Filing 169 at 25.

This part of Plaintiff's Motions in Limine is denied as moot.

### 5.   *Evidence of Cigarette and Marijuana Smoking*

### a.   The Parties' Arguments

The sixth and seventh categories that Plaintiff seeks to exclude are related. The sixth category is "[a]ny evidence, testimony, statement, inference, or argument relating to Michael Hansen being a smoker prior to his death." Filing 162 at 2. The seventh category is "[a]ny evidence, testimony, statement, inference, or argument relating to Michael Hansen's alleged use of marijuana

prior to his death." Filing 162 at 2. Plaintiff argues that these categories of evidence are irrelevant and more prejudicial than probative because Defendant has admitted liability in this case. Filing 162 at 2; Filing 163 at 13, 15. Plaintiff presumes that evidence that Michael was a smoker would be offered "to suggest that he is responsible for his premature death." Filing 163 at 10. Similarly, she argues that Defendant intends to use the evidence that Michael used marijuana "as the basis for some kind of stealth contributory negligence defense." Filing 163 at 14. As to both evidence of smoking and marijuana use, Plaintiff argues that Defendant never pleaded a contributory negligence defense and, in any event, such a defense is inapplicable in the medical malpractice case. Filing 163 at 11. She contends that the proper focus in this medical malpractice case is what Michael's doctors did or did not do to address his lung cancer. Filing 163 at 11, 14. She also contends that evidence of Michael's marijuana use is simply an ad hominem attack on his character to suggest that his death should not be compensated. Filing 163 at 15.

Addressing both categories of evidence together, Defendant asserts that it does not intend to use evidence of Michael's cigarette smoking for purposes of contributory negligence or to offer evidence of Michael's admitted marijuana use to attack his character. Filing 178 at 4. Defendant contends that it intends to offer evidence that Michael's significant smoking reduced his life expectancy and otherwise impacted his physical health and capabilities, which will aid the Court in assessing damages. Filing 178 at 4 (citing Nebraska Jury Instructions (2d ed.) (NJI2d), Civ. 460). Defendant also argues that Michael's healthcare providers intend to testify that Michael smoked marijuana daily for cervical pain, generalized pain, appetite, and relaxation, which the Court can consider when awarding damages. Filing 178 at 4 (citing NJI2d, Civ. 460). Defendant contends that this information is also relevant to rebut Elizabeth's testimony, purportedly as an expert, that Michael followed the advice of his physicians. Filing 178 at 4.

11

In reply, Plaintiff argues that Defendant's purportedly legitimate use of this evidence amounts to a "blaming the victim" defense that is inappropriate in a medical malpractice case. Filing 184 at 1–2. Plaintiff reiterates that Michael's damages in this case have no relation to his smoking or alleged use of marijuana but are instead related to the losses suffered as a result of Michael not receiving appropriate medical care related to his lung cancer diagnosis. Filing 184 at 2.

> b. Evidence of Cigarette and Marijuana Smoking Is Relevant and
> not Unduly Prejudicial in this Bench Trial

The primary premise of these parts of Plaintiff's Motions in Limine is that Defendant intends to mount a contributory negligence defense or a "stealth" contributory negligence defense. Filing 163 at 10–15. Defendant did not plead such a defense, *see generally* Filing 113, and disavows any intention to assert such a defense, *see* Filing 178 at 4. Instead, Defendant asserts that the evidence is relevant to Plaintiff's damages for wrongful death. Filing 178 at 4 (NJI2d, Civ. 460). The pertinent model jury instruction identifies "[t]he physical and mental health of (the decedent) had (he, she) not suffered the injuries that caused (his, her) death," and "[t]he decedent's life expectancy immediately before the injuries that caused (his, her) death" among the factors the trier of fact should consider in awarding damages for wrongful death. NJI2d, Civ. 460. Evidence of cigarette and marijuana smoking is relevant to both of these considerations of damages.

The Court would perhaps be more concerned about jurors, as factfinders, being unduly prejudiced or misled by evidence of Michael's cigarette and marijuana smoking, which could cause jurors to treat such evidence as contributory negligence evidence or simply as casting Michael in a bad light and improperly reducing damages on those grounds. *See United States v. Walker*, 68 F.4th 387, 392 (8th Cir. 2023) ("[U]nder Rule 403, relevant evidence may be excluded 'if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing

the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" (quoting Fed. R. Evid. 403)); *Jacobson Warehouse Co. v. Schnuck Markets, Inc.*, 13 F.4th 659, 677 (8th Cir. 2021) ("Unfair prejudice 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" (quoting *Walker v. Kane*, 885 F.3d 535, 540 (8th Cir. 2018)). However, in this case, the Court is the factfinder and is far less susceptible to being confused or misled and less inclined to make a decision on an emotional basis. *See, e.g.*, *Lund-Ross Constructors, Inc. v. Vecino Nat. Bridge, LLC*, No. 8:19CV550, 2023 WL 5607563, at *4 (D. Neb. Aug. 30, 2023) ("Of course, many of the dangers contemplated by Rule 403 are obviated or at least mitigated in a bench trial." (citing cases)). The Court will be able to consider such evidence for the proper purposes of assessing Michael's physical condition had he not suffered from undiagnosed cancer and his life expectancy prior to that missed diagnosis. NJI2d, Civ. 460. The Court can also consider post-trial but pre-verdict the propriety of considering such evidence in reaching a damages verdict.

These parts of Plaintiff's Motions in Limine are both denied. That said, the Court reiterates its warning to the parties that even in a non-jury trial the Court is sensitive to "undue delay, wast[e] of time, [and] needless[ ] present[ation of] cumulative evidence." *See* Filing 169 at 15 (quoting *Walker*, 68 F.4th at 392, in turn quoting Fed. R. Civ. P. 403). The parties should not tarry over their presentation of these two categories of evidence.

### C.  Defendant's Second Motion in Limine

The Court turns next to Defendant's Second Motion in Limine. Filing 164. Defendant's Motion seeks exclusion of seven categories of evidence, which the Court will consider in turn.

     *1.     Testimony of Larry Kobs*

The first category of evidence that Defendant seeks to exclude is "[a]ny testimony from Larry Kobs." Filing 164 at 1. Plaintiff explained in the email dated October 20, 2023, providing Defendant with a supplemental disclosure under Rule 26(a) that "Mr. Kobs was a life-long friend of Mr. Hansen," "they met when they were children," and "Mr. Kobs gave the eulogy at Mr. Hansen's funeral." Filing 167-1 at 3. Plaintiff anticipates that "Mr. Kobs will testify regarding Mr. Hansen's quality of life before and after the cancer disclosure." Filing 167-1 at 3. In Plaintiff's initial response to this part of Defendant's Motion, Plaintiff stated that Mr. Kobs was disclosed as a witness for the purpose of relieving some of the burden that Elizabeth will experience at trial, because "[h]e will speak to Michael Hansen—the man—and his observations of Michael over the final year-and-a-half of his life." Filing 180 at 3. However, in a Notice Regarding Witness Larry Kobs filed December 6, 2023, Plaintiff gives notice "to confirm that Plaintiff does not anticipate nor intend to call Mr. Kobs to testify at the upcoming trial." Filing 197 at 1. Thus, she asserts that "the pending motion in limine related to Mr. Kobs' testimony at the trial is moot." Filing 197 at 1. The Court agrees. Therefore, this part of Defendant's Second Motion in Limine is denied as moot.

     *2.     Testimony from Drs. Jack Vonk, Marvin Bittner, and Matthew Rivard*

At all relevant times, Dr. Jack Vonk was a radiologist at the Omaha VA Hospital (VA-Nebraska). Filing 109 at 4 (¶ 23). Dr. Vonk was the radiologist who observed the mass in Michael's lower lobe of his right lung on July 2, 2019, and reported it to other doctors at VA-Nebraska. Filing 109 at 5 (¶¶ 24–25). Plaintiff noticed Dr. Vonk's deposition for a date in December 2022, Filing 64, but withdrew the notice in November 2022, Filing 80. At all relevant times, Dr. Marvin Bittner was an infectious disease physician at VA-Nebraska. *See* Filing 167-1 at 6 (Dr. Gary Gorby Depo., 47:4-8). Dr. Bittner provided care to Michael at various times in April 2019 and June/July 2019

related to an abdominal infection. Filing 167-1 at 6 (Dr. Gorby Depo. at 47:11–13). Plaintiff noticed Dr. Bittner's deposition for a date in December 2022, Filing 65, but withdrew the notice in November 2022, Filing 81. At all relevant times, Dr. Matthew Rivard was a general surgeon and Michael's surgeon at VA-Nebraska to whom Dr. Vonk reported the presence of the likely malignant mass in Michael's lung. Filing 109 at 5 (¶ 25). Plaintiff did not notice or take the deposition of Dr. Rivard.

Defendant argues that the testimony of these witnesses is irrelevant and will only unnecessarily lengthen the trial where Defendant has admitted liability. Filing 168 at 4. Plaintiff responds that, in light of the Court's Memorandum Opinion and Order on Defendant's Motions in Limine, Filing 169, which came out after Defendant's Second Motion in Limine was filed, she does not intend to call these witnesses, although she reserves the right to make an offer of proof or to call these witnesses at trial if circumstances require. Filing 180 at 5.

Thus, this part of Defendant's Second Motion in Limine is denied as moot.

### 3.    Testimony from Dr. David Williams, Dr. Matthew Wheeler, and Peggy Jacobsen

The third category of evidence that Defendant seeks to exclude is identified in its Motion as "[a]ny testimony from Dr. David Williams and Peggy Jacobsen." Filing 164 at 1. However, in its brief, Defendant states this category as "testimony from Dr. David Williams, Dr. Matthew Wheeler, and Peggy Jacobsen." Filing 168 at 5 (reduced from all capitals). Plaintiff represents "that she does not intend to call Ms. Peggy Jacobsen or Dr. Matthew Wheeler at this time," but she reserves the right to make an offer of proof or to call these witnesses at trial if circumstances require. Filing 180 at 8. Plaintiff does intend to call Dr. Williams, however. Filing 180 at 8. Thus, as to this category of evidence, the fighting issue is Dr. Williams's testimony.

    a. The Parties' Arguments

  Defendant asserts that Dr. Williams stated in his deposition that he has no independent knowledge of VA-Nebraska's care and treatment of Michael. Filing 168 at 5 (citing Filing 167-1 at 23 (Dr. Williams Depo. at 11:4–25)). Instead, Defendant argues that Dr. Williams's only role in this case was a discussion with Ms. Whale about the need for an Institutional Disclosure. Filing 168 at 5 (citing Filing 167-1 at 23 (Dr. Williams Depo. at 11:4–25)). Consequently, Defendant argues that Dr. Williams's testimony is irrelevant. Filing 168 at 6.

  Plaintiff argues that Dr. Williams should be allowed to testify on matters related to the Institutional Disclosure that the VA conducted with the Hansens. Filing 180 at 8. Plaintiff argues that Dr. Williams's testimony is required to provide context to the damages Michael suffered, even though Dr. Williams was not in the room when the Institutional Disclosure was "carelessly" performed. Filing 180 at 8–9. She contends this is so, because Dr. Williams oversaw that process and played an "integral role" in the planning and the execution of the Institutional Disclosure. Filing 180 at 8–9.

  In reply, Defendant acknowledges that Michael's pre-death pain and suffering are elements of damages on the "survival" claim, but Defendant argues that the cause of the pain and suffering—which was alleged to be the failure to follow up when the mass was discovered—is irrelevant where liability has been admitted. Filing 185 at 2. Defendant argues that this is true of any testimony about why the Institutional Disclosure was conducted, including its planning and execution. Filing 185 at 2. Finally, Defendant argues that Plaintiff has not pleaded a cause of action for negligence related to the Institutional Disclosure, only as to medical negligence and failure to warn. Filing 185 at 2–3.

> b.  Plaintiff Did Not Plead a Claim Based on Negligence in
> Conducting the Institutional Disclosure

Defendant does not dispute and the Court concludes that Plaintiff may recover Michael's

pre-death mental pain, suffering, and anguish arising from the negligence alleged against

Defendant. Filing 185 at 2; *see also In re Estate of Panec*, 864 N.W.2d 219, 225 (Neb. 2015) ("The

survival action is brought on behalf of the decedent's estate and encompasses the decedent's claim

for predeath pain and suffering, medical expenses, funeral and burial expenses, and any loss of

earnings sustained by the decedent, from the time of the injury up until his or her death."). Plaintiff

apparently believes that she can recover on a survival claim for Defendant's "carelessly"— *i.e.*,

negligently—conducting or executing the Institutional Disclosure. *See* Filing 180 at 8–9 (asserting

that Dr. Williams's testimony is relevant, "[a]lthough he was not in the room when the carelessly

conducted Institutional Disclosure was performed," because "Dr. Williams played an integral role

in its planning and execution"). The problem is that Plaintiff has not pleaded a claim for Michael's

predeath injuries based on a negligently conducted or executed Institutional Disclosure. Instead,

in her Amended Complaint, Plaintiff asserts two causes of action, the first for "medical

negligence" and the second for "negligent failure to warn." Filing 109 at 7–11 (¶¶ 37–49). She

then asserts that Michael's damages from these negligence claims included *inter alia* "mental pain,

suffering, anguish, and emotional distress." Filing 109 at 14 (¶ 58). She also alleges that Michael's

damages on a "survival claim" included "pain and suffering" and "apprehension of death" that

were "a direct and proximate result of the improper actions, improper omissions, negligence,

and/or malpractice of the VA physicians," that is, the improper actions alleged in the Amended

Complaint. Filing 109 at 15 (¶ 61). There is no reference to negligence in the performance of the

Institutional Disclosure. *See, e.g.*, Filing 109 at 6 (¶ 34) (alleging that at a meeting on October 27,

2020, Dr. Gorby and Ms. Whale disclosed to Michael and Elizabeth that the VA-Nebraska had, in

fact, observed the mass on Michael's right lung in July 2019, but nobody had followed up, but not alleging that the execution of the disclosure was itself negligent).

Because Plaintiff alleges that Dr. Williams's testimony would be relevant to a claim that she has not pleaded, there is no basis for admitting Dr. Williams's testimony at trial. Therefore, this part of Defendant's Second Motion in Limine is granted.

### 4.   *Deposition Testimony from Michael Hansen*

The fourth category of evidence Defendant seeks to exclude in its Second Motion in Limine is "[a]ny deposition testimony from Michael Hansen." Filing 164 at 1. In its brief, Defendant frames this category as "transcript and video of sworn statement of Michael Hansen" (Michael's Statement). Filing 168 at 6 (reduced from all capitals). The transcript and video are identified as Plaintiff's Exhibits 34 and 35, respectively, in Filing 179 at 3 (amended Joint List of Trial Exhibits). Michael's Statement was taken on March 18, 2021, the same day that Plaintiff's claim was presented to the Department of Veterans Affairs. *See* Exhibit 34 at 1; Filing 109 at 2 (¶ 9). Only Plaintiff's counsel appeared. Exhibit 34 at 1. That date was six months prior to the filing of this lawsuit on September 23, 2021. Filing 1. Michael's Statement consists of questions by Plaintiff's counsel and responses by Michael, with no cross-examination. Exhibit 34 at 1-2.

### a.   The Parties' Arguments

Defendant argues that no one from the United States Attorney's Office was given notice of or an opportunity to participate in Michael's "deposition," even though Michael had filed or was about to file a tort claim. Filing 168 at 7. Defendant asserts that a deposition can only be used at trial against a party if the party was present or represented at the taking of the deposition. Filing 168 at 7 (citing Fed. R. Civ. P. 32(a)(1)(A)). Consequently, Defendant argues, that its absence

when Michael's Statement was taken means that Michael's Statement should be excluded at trial. Filing 168 at 7.

Plaintiff's response begins with an assertion that Michael's Statement, either as a written transcript or as a video, is admissible under Federal Rule of Evidence 807(a) and that she provided proper notice of intent to use it pursuant to Rule 807(b). Filing 180 at 9. Plaintiff then engages in a fairly lengthy discussion of the circumstances surrounding Michael's Statement, the filing of a claim with the VA, and the eventual filing of the lawsuit. Filing 180 at 9–11. She argues that Michael's Statement meets all the requirements for admission pursuant to Rule 807 set out by the Eighth Circuit Court of Appeals. Filing 180 at 11–12. She particularly focuses on Michael's Statement as the only direct evidence of his pre-death state of mind, so it will serve the interests of justice in informing the Court's ability to ascertain the extent of Michael's damages. Filing 180 at 12. Plaintiff also explains that her counsel's notice to Defendant of intent to use the statement was sufficient. Filing 180 at 13.

In reply, Defendant reiterates its position that Michael's Statement is inadmissible pursuant to Rule 32. Filing 185 at 3. In the alternative, Defendant argues that Rule 807 was not intended to destroy the hearsay rule but should instead be used only in exceptional circumstances. Filing 185 at 3. Defendant argues these circumstances are not exceptional, "especially considering how easily Plaintiff could have met the requirements of Rule 32(a)(1)(A)." Filing 185 at 3.

  b. Michael's Statement Does Not Satisfy Rule 32(a)(1)(A) so Rule 807 is Irrelevant

The Court's review of Michael's Statement shows that it is a deposition without representation by the opposing party and hence without cross-examination, in that it was a recorded statement given under oath and involved Michael's answers to his counsel's questions. *See* Exhibit 34 at 1 (indicating Michael was sworn before making the Statement); *see, e.g.*, *Manual of Model*

*Civil Jury Instructions for the District Courts of the Eighth Circuit* (2023), 2.14 ("A deposition is the recorded answers a witness made under oath to questions asked by lawyers before trial."); Fed. R. Civ. P. 30(c). Because Michael's Statement was a deposition, Federal Rule of Civil Procedure 32(a)(1)(A), which sets requirements for use of a deposition at a hearing or trial, applies to Michael's Statement.

Federal Rule of Civil Procedure 32(a)(1)(A) states,

(a) Using Depositions.

**(1) *In General*.** At a hearing or trial, all or part of a deposition may be used against a party on these conditions:

**(A)** the party was present or represented at the taking of the deposition or had reasonable notice of it;

**(B)** it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

**(C)** the use is allowed by Rule 32(a)(2) through (8).

Fed. R. Civ. P. 32(a)(1). The part of Rule 32(a) authorizing use of Michael's Statement as required by Rule 32(a)(1)(C)—if the Statement meets other requirements of the Rule—would be Rule 32(a)(4)(A), concerning an "Unavailable Witness," which states, "A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: (A) that the witness is dead." Fed. R. Civ. P. 32(a)(1)(4)(A).

In *Fletcher v. Tomlinson*, 895 F.3d 1010 (8th Cir. 2018), the Eighth Circuit Court of Appeals observed that several circuit courts had concluded that Rule 32(a) is an independent exception to the hearsay rule. 895 F.3d at 1020 n.9 (citing cases). The Eighth Circuit agreed. *Id.* at 1020. However, there is a dearth of caselaw considering the interplay between Rule 32(a) and the hearsay exception under Federal Rule of Evidence 807, on which Plaintiff relies.

Nevertheless, a well-respected treatise states the following:

20

> In considering the use of depositions at a trial or hearing, it is helpful to remember that the problem has two aspects. First, the conditions set forth in Rule 32(a) must be satisfied before the deposition can be used at all. Second, when it is found that these conditions authorize the use of the deposition, it must be determined whether the matters contained in it are admissible under the rules of evidence.

8A Wright & Miller, *Fed. Prac. & Proc. Civ.* (3d ed.) (Wright & Miller), § 2142 General Principles Relating to the Use of a Deposition. Thus, this treatise indicates that Rule 32(a) takes priority over the Federal Rules of Evidence on the admissibility of deposition testimony. The priority of Rule 32(a) over a hearsay exception under the Federal Rules of Evidence makes sense, where the second of three conditions for use of a deposition under Rule 32(a)(1) is that the deposition "is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying." Fed. R. Civ. P. 32(a)(1)(B). Those three conditions of Rule 32(a)(1) must all be met, where the series ends with "and" not "or." Fed. R. Civ. P. 32(a)(1). Thus, failure to satisfy any one of the Rule 32(a)(1) conditions requires exclusion of the deposition. *Id.*

Michael's Statement does not satisfy the first aspect of the problem of admissibility of a deposition at trial identified in the treatise: satisfaction of the requirements of Rule 32(a). 8A Wright & Miller, § 2142. Specifically, it does not satisfy Rule 32(a)(1)(A) where no representative of Defendant was present when Michael's Statement was taken. Fed. R. Civ. P. 32(a)(1)(A) ("the party was present or represented at the taking of the deposition or had reasonable notice of it").Under the Federal Tort Claims Act, the only proper defendant is the United States, not the agency or its employees that allegedly engaged in the tortious conduct. *See Duncan v. Dep't of Lab.*, 313 F.3d 445, 447 (8th Cir. 2002) ("Because a federal agency cannot be sued under the Federal Tort Claims Act, the United States is the proper defendant." (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 476–77 (1994)).

Plaintiff argues that the Hansens' "point of contact" with the VA while the administrative claim was pending was Lawrence W. Stunkel, a staff attorney for the Office of the General Counsel for the VA. Filing 180 at 10. Plaintiff also states that she arranged for Mr. Stunkel to conduct a telephone interview with Michael, which took place on August 12, 2021. Filing 109 at 10 (citing Filing 175-1 at 9 (email concerning the VA staff attorney taking a statement). The statement taken by the VA is not in the record. Plaintiff argues, "Because the interview was conducted by phone, it is unknown whether Mr. Stunkel had anyone else in attendance with him, but certainly he could have invited someone from the U.S. Attorney's Office to participate, if needed." Filing 180 at 10–11. Where Plaintiff arranged for the participation of the VA's staff attorney at the taking of another statement a few months after Michael's Statement, Plaintiff could have arranged for that later statement to be a "preservation deposition"—that is, a statement under oath with questioning by counsel for both sides. Plaintiff might then have had a colorable argument that there was sufficient identity between the VA and the United States for the later statement to be admissible.

However, as to Michael's March 18, 2021, Statement, where Defendant's representative was not present, and no attempt was apparently made to have VA or United States representation present, Michael's March 18, 2021, Statement cannot be used "at all." 8A Wright & Miller, § 2142. It was Plaintiff's responsibility—not anyone else's—to make sure Michael's Statement met the requirements of Rule 32(a)(1) to be admissible.

This part of Defendant's Motion in Limine is granted and Michael's Statement will be excluded at trial.

   5.   *Testimony of Dr. Gary Gorby and Laura Whale to the Institutional Disclosure*

In the fifth part of Defendant's Motion in Limine, Defendant seeks to "limit" not exclude the "testimony of Dr. Gary Gorby and Laura Whale to the Institutional Disclosure." Filing 164 at

1. At all relevant times, Dr. Gorby was the Chief of Medicine at the VA-Nebraska. Filing 167-1 at 5 (Dr. Gorby Depo., 28:20–24). At all relevant times, Laura Whale was the Risk Manager and Peer Review Coordinator at the VA-Nebraska. Filing 167-1 at 7 (Dr. Gorby Depo. at 60:6–14). Dr. Gorby and Ms. Whale conducted the Institutional Disclosure to the Hansens. Filing 167-1 at 9 (Dr. Gorby Depo. at 119:8–17). Dr. Gorby's record of the Institutional Disclosure is Exhibit 49.

   a.   The Parties' Arguments

Defendant contends that Plaintiff intends to call Dr. Gorby and Ms. Whale to testify about the basis for and circumstances of the Institutional Disclosure, but any such testimony goes to liability, which is admitted, and is irrelevant to damages. Filing 168 at 5. Defendant points out that a magistrate judge limited the parameters of Dr. Gorby's and Ms. Whale's depositions to their observations of the Hansens' reactions to the Institutional Disclosure as it relates to damages. Filing 168 at 5 (citing Filing 71 (audio recording)). Defendant acknowledges that Michael's pre-death pain and suffering is an element of damages in a "survival" claim, pursuant to Nebraska Revised Statutes § 25-1401. Filing 168 at 5. Nevertheless, Defendant asks that "any testimony provided by Dr. Gorby or [Ms.] Whale be limited to their observations of Mr. Hansen's response to the Omaha VA's acknowledgment that the July 2, 2019, imaging study showing a nodule in the right lower lobe of his lung should have been followed up on in 2019 after Mr. Hansen's acute illness resolved." Filing 168 at 5.

Plaintiff contends that testimony of Dr. Gorby and Ms. Whale is relevant to the issue of damages. Filing 180 at 5. She asserts that "it remains unclear as to whether the Government has admitted that it was negligent in how the Institutional Disclosure of the Government's actions was conducted, which caused severe emotional distress damages to Michael." Filing 180 at 5–6. Consequently, Plaintiff argues that "the context of the Institutional Disclosure, which both

Dr. Gorby and Ms. Whale are expected to testify to, is relevant to the issue of damages." Filing 180 at 6. Plaintiff asserts further that Defendant has contested the nature and extent of Michael's alleges injuries and/or damages, which Plaintiff asserts means Defendant has contested whether its negligence as opposed to other factors like Michael's underlying health conditions was a cause of Michael's damages. Filing 180 at 7. Consequently, Plaintiff argues that her claim that Michael suffered mental pain, suffering, anguish, and emotional distress requires context, which Dr. Gorby's and Ms. Whale's testimony will provide by testifying about the basis for and the circumstances of the Institutional Disclosure, thus showing why Michael suffered such anguish. Filing 180 at 7. Plaintiff argues that a motion in limine should only be granted if the evidence is inadmissible for any purpose. Filing 180 at 8.

In reply, Defendant clarifies that Dr. Gorby's and Ms. Whale's testimony about their observations of the Hansens' reactions during the Institutional Disclosure is permissible, but that Plaintiff goes too far by seeking admission of their testimony about the basis for and the circumstances of the Institutional Disclosure. Filing 185 at 2. Defendant reiterates, "The basis for [Michael's] pain and suffering—the failure to follow up—is not relevant as liability has been admitted. This includes any testimony about why the Institutional Disclosure was conducted, including its planning and execution." Filing 185 at 2. Defendant also reiterates that Plaintiff has not pleaded a cause of action for negligence related to the Institutional Disclosure. Filing 185 at 2–3.

> b. Plaintiff Did Not Plead a Claim Based on Negligence in Conducting the Institutional Disclosure So Dr. Gorby's and Ms. Whale's Testimony Will Be Limited

For much the same reason the Court excluded the testimony Dr. Williams above in II.C.3.b., the Court now concludes that the testimony of Dr. Gorby and Ms. Whale about the

Institutional Disclosure should be limited. Plaintiff cannot recover for alleged negligence in conduct of the Institutional Disclosure because she has pleaded no such claim. *See* Filing 109 at 7–11 (¶¶ 37–49), 14 (¶ 58), 15 (¶ 61). There is no reference to negligence in the performance of the Institutional Disclosure in the Amended Complaint. *See, e.g.*, Filing 109 at 6 (¶ 34).

Instead, the claims Plaintiff pleaded "medical negligence" in failing to follow up once the mass in Michael's right lung was observed in July 2019 and "failure to warn," that is, to inform and warn Michael that he had or was likely to develop cancer. Filing 113 at 7 (¶ 42); *see also* Filing 76 at 42 (¶ 42). The failure to perform that following up or give the warning in July 2019 was the reason for the Institutional Disclosure, so that much of the "basis" for the Institutional Disclosure is admissible to show why Michael suffered mental anguish. *See* Filing 180 at 7. Also, the Court finds and Defendant agrees, Filing 168 at 5; Filing 185 at 2, that Dr. Gorby's and Ms. Whale's testimony about their observations of the Hansens' reactions during the Institutional Disclosure is admissible, because that reaction is to the information in the Institutional Disclosure—the failure to follow up—rather than to the manner in which the Institutional Disclosure was conducted. That evidence goes to proximate cause of Michael's mental pain and suffering. *See* NJI2d, Civ. 401 (explaining that the factfinder may award damages "proximately caused by defendant's negligence"). Contrary to Plaintiff's contentions, however, *see* Filing 180 at 7, the "circumstances" of the Institutional Disclosure—including its planning and execution— are not relevant to any of Michael's mental anguish proximately caused by the negligent conduct Plaintiff has actually alleged. Indeed, evidence of those "circumstances" is more prejudicial than probative as it distracts from the proper basis for awarding Michael mental anguish damages. *See* Fed. R. Evid. 403.

25

Thus, this part of Defendant's Second Motion in Limine is granted and Dr. Gorby's and Ms. Whale's testimony will be limited as explained just above.

### 6.    Improper Discovery Designations

The sixth category that Defendant seeks to exclude in its Motion is "[i]mproper discovery designations." Filing 164 at 1. This category is described in Defendant's supporting brief as "Interrogatories." Filing 168 at 8 (reduced from capitals). Plaintiff responds that the parties have resolved the issue of her designation of the specific interrogatories to be offered at trial. Filing 180 at 2, 15–17. In its reply brief, Defendant does not dispute Plaintiff's statement that this issue has been resolved. *See generally* Filing 185.

Accordingly, this part of Defendant's Second Motion in Limine is denied as moot.

### 7.    Expert Testimony from Elizabeth Hansen

The last category of evidence challenged in Defendant's Second Motion in Limine is "[a]ny expert testimony from Lisa Hansen." Filing 164 at 1; Filing 168 at 7 ("Ms. Hansen's testimony as an expert at trial" (reduced from all capitals)). Admissibility of this category of evidence is contested.

#### a.   The Parties' Arguments

Defendant argues that Elizabeth is expected to testify that Michael received appropriate and routine care for his medical conditions and that those conditions were under control and stable before Michael was diagnosed with lung cancer. Filing 168 at 7. While conceding that evidence of physical and mental health of the decedent, including his life expectancy, is relevant to the issue of damages, Defendant argues that only a medical profession can testify about whether a patient received appropriate and routine care and whether a patient's conditions were under control and stable, but Elizabeth has no medical training. Filing 168 at 7. Thus, Defendant argues her testimony

26

that Michael received appropriate and routine care for his medical conditions and whether those conditions were under control and stable must be excluded. Filing 168 at 8.

Plaintiff contends that Elizabeth has specialized knowledge as to her observations of Michael, the care and help she provided, and her observations of the medical care and treatment that Michael received. Filing 180 at 13–14. Plaintiff points out that Elizabeth was designated as a non-retained expert and that Defendant's challenge appears to be an untimely *Daubert* motion. Filing 180 at 14 and n.3. She argues that non-retained experts may testify about opinions that were formed during the course of their participation in the relevant events. Filing 180 at 14. She then details Elizabeth's involvement in Michael's care. Filing 180 at 14–15. Plaintiff contends that Defendant is improperly seeking to exclude broad and vaguely defined swaths of evidence without providing any context as to relevance. Filing 180 at 15.

In reply, Defendant states that it has moved to limit "expert" testimony from Elizabeth because she is not qualified to opine on Michael's physical and mental health. Filing 168 at 7–9. Defendant disputes the sufficiency of Elizabeth's "specialized knowledge" from observations of the care Michael received and the care she provided where Elizabeth lacks medial training. Filing 168 at 3.

b.  The Court will Give Elizabeth's Purported Expert Testimony whatever Weight the Court Finds Is Appropriate

Plaintiff is correct that Defendant's challenge to "expert" testimony on the basis of lack of qualification is a *Daubert* motion. See *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) (giving the district court a "gatekeeping role" to ensure the expert testimony is relevant and reliable). "The main purpose of Daubert exclusion is to protect juries from being swayed by dubious scientific testimony." *United States v. McDaniel*, 925 F.3d 381, 385 (8th Cir. 2019) (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011)).

However, "[t]here is 'less need' for this 'gatekeeping function' in bench trials." *Id.* (quoting *In re Zurn*, 644 F.3d at 613). "In fact," the Eighth Circuit has explained, "[t]here is no requirement that the [d]istrict [c]ourt always hold a Daubert hearing prior to qualifying an expert witness under Federal Rule of Evidence 702." *Id.* (quoting *United States v. Geddes*, 844 F.3d 983, 991 (8th Cir. 2017) (alterations in original)).

The Court is capable of determining at trial after hearing all the testimony whether or not to give any weight to Elizabeth's purported "expert" testimony about whether Michael received appropriate and routine care for his medical conditions and that those conditions were under control and stable before Michael was diagnosed with lung cancer based on her personal observations despite her lack of medical training. No doubt, her lack of formal medical training will have some impact on the weight the Court gives any purportedly "expert" opinion she gives on these issues. Nevertheless, she is also a percipient lay witness, so she is certainly allowed to testify about what she observed concerning Michael's medical treatment, his mental condition, and the state of his health conditions. She is also entitled under Federal Rule of Evidence 701 to opine on matters as a lay witness so long as her opinions are rationally based on her perception; may be helpful to understanding her testimony or helpful to the trier of fact to determine any fact; and not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. Her testimony on all these matters, either as an "expert" or as a lay witness, may be subject to timely objections at trial.

This part of Defendant's Second Motion in Limine is denied without prejudice to objections to Elizabeth's testimony at trial.

### D.  Defendant's Third Motion in Limine

As mentioned at the outset of this decision, Defendant has also filed an eleventh-hour Third Motion in Limine, Filing 186, concerning Plaintiff's eleventh-hour supplement of an expert's report. More specifically, this Motion seeks exclusion of "[a]ny report or testimony related to the report drafted by Dr. William Rogers dated November 20, 2023." Filing 186 at 1. Defendant explains that Plaintiff did not disclose any rebuttal economist expert report by the deadline of June 6, 2023, but this supplemental report was provided to Defendant on November 27, 2023, a mere fifteen days before trial. Filing 189 at 1.

#### 1.    The Parties' Arguments

Defendant asserts that Dr. Rogers's "new" report discloses new opinions in violation of Federal Rule of Civil Procedure 26(e)(2) and (a)(3), so it should be excluded pursuant to Federal Rule of Civil Procedure 37(c)(1). Filing 189 at 1. Defendant argues there are two "striking" changes in this "new" report. The first change is an unexplained recharacterization of a category of damages he formerly called "Family Services" as "Family Support." Filing 189 at 2. In addition, Defendant complains that, without explanation, Dr. Rogers "drastically" increased the values for this category of damages at both age 70 and age 70.5. Filing 189 at 2. The second "striking" change according to Defendant is that Dr. Rogers also changed and increased his calculations regarding the present discounted value of the economic loss to Michael's Estate when annual mortality risks are removed and losses are calculated to a specific age. Filing 189 at 2. Defendant argues there can be no dispute that the "new" report was not timely disclosed. Filing 189 at 3. Defendant also argues that it has been prejudiced by the belated disclosure because Defendant was forced to reengage its economist expert, Dr. David Rosenbaum, and had to incur both time and money expenditures in the midst of preparing to defend a trial already involve many witnesses and exhibits, which has

29

ultimately resulted in Dr. Rosenbaum providing a second supplemental report on November 29, 2023, a mere 12 days before trial. Filing 189 at 3. Defendant argues that Dr. Rogers's "new" report and change in opinions will also impact trial preparation tactics and strategy to address the "new" issue of why Dr. Rogers's category name and numbers changed so drastically. Filing 189 at 3–4. Defendant also criticizes the seven-day delay between the date of Dr. Rogers's "new" report and its disclosure to Defendant. Filing 189 at 4. Defendant also argues that its own supplement of Dr. Rosenbaum's report on November 2, 2023, is in no way comparable to the belated disclosure of Dr. Rogers's "new" report, where Dr. Rosenbaum corrected a clerical error and indicated agreement with Dr. Rogers's estimate on one calculation in a way beneficial to Plaintiff. Filing 189 at 4. Defendant argues that both Dr. Rogers's and Dr. Rosenbaum's trial testimony should be limited to the opinions in their reports predating Dr. Rogers's "new" report. Filing 189 at 5.

Plaintiff argues that Dr. Rosenbaum indicated in his deposition on May 3, 2023, that he was likely to update his report as to economic data shortly before trial. Filing 200 at 1–2. Plaintiff also contends that Dr. Rogers has now merely supplemented his original report's calculations based on a present value date of December 12, 2023, instead of March 10, 2023, taking into account the changes that result from the nine-month lapse to past losses, life expectancy as to future losses, and changes in discount rates. Filing 200 at 3–4. Plaintiff argues that this amendment does not require additional analysis by Defendant's experts and does not otherwise prejudice Defendant by springing some new novel concept or formula that requires detailed analysis; instead, it simply gives the Court up-to-date information. Filing 200 at 3. As to the "name change" for a category of damages from "Family Services" to "Family Support," Plaintiff explains that Dr. Rogers's firm made the change as a matter of policy, where it had used the two terms interchangeably, so that future confusion between the two terms would be eliminated. Filing 200

30

at 4. Plaintiff also states that Dr. Rogers has corrected an error identified by Dr. Rosenbaum in a summary table of figures that was reflected in the main tables in his report. Filing 200 at 5. Plaintiff points out that the supposed "seven-day" lag between the date of the supplemental report and when it was delivered to Defendant was over the Thanksgiving holiday, so that the report was delivered to Defendant within two business days. Filing 200 at 5. Finally, Plaintiff does suggest that Dr. Rosenbaum's supplemental report beyond the deadline actually involves more profound changes than Dr. Rogers's supplemental report because Dr. Rosenbaum's agreement now with Dr. Rogers's shows that Dr. Rosenbaum has changed the underlying methodology of his original report. Filing 200 at 7.

### 2.   Applicable Standards

Federal Rule of Civil Procedure 37(c)(1) provides "If a party fails to provide information . . . as required by Rule 26(a)," then the party may not use that information at trial, "unless the failure was substantially justified or is harmless." Although Rule 37(c)(1) is not applicable until the undisclosed witness is used at trial, *see Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 435 (8th Cir. 2019) (*Petrone I*); *accord Petrone v. Werner Enterprises, Inc.*, 42 F.4th 962, 968 (8th Cir. 2022) (*Petrone II*) (emphasizing this point, citing *Petrone I*, 940 F.3d at 435), Plaintiff here has clearly shown her intent to use Dr. Rogers's supplemental report at trial.

Bad faith is not required to bar untimely disclosed evidence if there is no justification. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 704 (8th Cir. 2018). However, as the Eighth Circuit Court of Appeals has explained in more detail,

> "A district court 'has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case' when a party fails to provide information ... in compliance with Rule 26(a)." *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 644–45 (8th Cir. 2022) (quoting *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)). In fashioning a remedy, courts should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to

which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id*. at 645 (quoting *Wegener*, 527 F.3d at 692).

*Zick v. Paccar, Inc*., 47 F.4th 672, 677 (8th Cir. 2022). As to "surprise and prejudice," even if a disclosure is late, the complaining party must articulate how it was (or will be) prejudiced by the late disclosure. *Wallace v. Pharma Medica Rsch., Inc*., 78 F.4th 402, 409 (8th Cir. 2023).

As to sanctions under Rule 37(c)(1), the district court has discretion to consider lesser sanctions than exclusion of the witness, but "the district court's discretion to fashion a remedy or sanction for discovery violations under Rule 37 is not absolute." *Vanderberg*, 906 F.3d at 704 (quoting *Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011)). Rather, the discretion "narrows as the severity of the sanction or remedy it elects increases." *Id*. (quoting *Young*, 664 F.3d at 734). Specifically, "[w]here the exclusion of evidence is tantamount to dismissal, a district court may need to first consider the possibility of lesser sanctions." *Id*. at 704-05. The party facing Rule 37(c)(1) sanctions has the burden to show its misconduct deserves only a lesser sanction, but "[t]he district court d[oes] not abuse its discretion by not imposing a lesser sanction when [that party] never request[s] one." *Id*. at 705.

### 3.    *No Sanction Is Appropriate in the Circumstances Presented*

Defendant is correct that there is no dispute that Dr. Rogers's November 20, 2023, is late, when it was disclosed so close to trial. *See* Fed. R. Civ. P. 37(c)(1). However, contrary to Defendant's contentions, the Court concludes that Plaintiff has shown that the belated disclosure is both substantially justified and harmless. *Id*.; *Zick*, 47 F.4th at 677 (instructing the court to consider the reason for noncompliance before imposing a sanction); *Vanderberg*, 906 F.3d at 704 (explaining that sanctions do not require bad faith if the proponent fails to offer a justification).

32

The Court's review of Dr. Rogers's supplemental report, 188-1 at 3–15, does support Defendant's and Dr. Rogers's justification for the supplement. *See* Filing 199 at 3–4 (Dec. 7, 2023, Declaration of Dr. Rogers). The supplemental report states its purpose as follows:

> This report updates our previous report in this case dated March 10, 2023. This updated report considers a trial date of December 12, 2023, and it utilizes the latest available general economic data.

Filing 188-1 at 4. Furthermore, the letter conveying the supplemental report to Plaintiff's counsel explains the various changes and why they were made. Filing 199 at 5 (explaining that the update adjusted for the trial date), 6 (explaining that the update adjusted for new discount rates and new growth rates), 6 (explaining the reasons for the new label of "Family Support" rather than "Family Services"), 6 (explaining that the update addressed a clerical error pointed out by Dr. Rosenbaum). The justification weighs heavily in favor of allowing the updated opinions reflected in the supplemental report without any other sanction. *Zick*, 47 F.4th at 677 (listing factors to consider before imposing a sanction, including "the reason for noncompliance").

It is not clear to the Court whether this letter from Dr. Rogers to Plaintiff's counsel was also conveyed to Defendant with the supplemental report, but it does appear to the Court that this letter answers all or nearly all of Defendant's questions about why changes were made. Consequently, it substantially mitigates any harm to Defendant. *See* Fed. R. Civ. P. 37(c)(1); *Zick*, 47 F.4th at 677 (listing factors to consider including "the surprise and prejudice to the opposing party"). Consequently, it also substantially mitigates the need for much disruption of the order and efficiency of the trial, as it will reduce (but not necessarily eliminate) the need for Defendant to explore the changes between Dr. Rogers's original and supplemental reports. *Id.* (listing another factor as "the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial"). Finally, as to the "*Zick* factors," it is clear that in this "survival" and

"wrongful death" case, the testimony of economic experts on both sides will provide the Court with critical information in determining damages. *Id.* (listing last "the importance of the information or testimony"). To exclude this evidence would not be "tantamount to dismissal," but it would leave a limited and potentially inaccurate record on damages counseling against a severe sanction or, in this case, any sanction at all. *Cf. Vanderberg*, 906 F.3d at 704.

As a final point, the Court concludes that there was no significant delay between Plaintiff's receiving the supplemental report before the Thanksgiving weekend and providing it to Defendant after the Thanksgiving weekend. *See, e.g.*, *Hudson Enterprises, Inc. v. Certain Underwriters at Lloyd's London Ins. Companies*, 855 F.3d 874, 878 (8th Cir. 2017) (finding no abuse of discretion in denying a motion to exclude an expert's testimony when his supplement was provided to opposing counsel only a few days after the proponent received it).

Therefore, the Court denies Defendant's Third Motion in Limine.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.    Defendant's Motion to Sequester Witnesses, Filing 161, is granted, and the Court will exclude from the courtroom all witnesses except Plaintiff as a party to the action and Defendant's representative when they are not testifying;

2.    Plaintiff's Motions in Limine, Filing 162, is granted in part and denied in part as set out above;

3.    Defendant's Second Motion in Limine, Filing 164, is granted in part and denied in part as set out above; and

4.    Defendant's Third Motion in Limine, Filing 186, is denied.

Dated this 8th day of December, 2023.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge